# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANTONIO MENDEZ**
    **Petitioner,**

  v.             **Case No. 08-C-0667**
               **(Criminal Case No. 98-CR-104)**

**UNITED STATES OF AMERICA**
    **Respondent.**

## ORDER REGARDING CERTIFICATE OF APPEALABILITY

Petitioner Antonio Mendez seeks a certificate of appealability ("COA") in order to appeal the denial of his § 2255 motion. See Fed. R. App. P. 22(b). In order to obtain a COA, petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quote marks omitted). Where, as here, the district court has rejected the petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.

## I. BACKGROUND

A jury convicted petitioner of racketeering (count one), 18 U.S.C. § 1962(c), racketeering conspiracy (count two), 18 U.S.C. § 1962(d), and murder in aid of racketeering activity (count

four), 18 U.S.C. § 1959(a)(1), arising out of his involvement with the Latin Kings street gang, and I sentenced him to life in prison. Petitioner appealed, challenging the sufficiency of the evidence establishing the Latin Kings "enterprise," the sufficiency of the evidence connecting the murder to the enterprise, and the constitutionality of his sentence under United States v. Booker, 543 U.S. 220 (2005). The court of appeals affirmed his convictions but ordered a limited, Paladino remand of the sentence. United States v. Olson, 450 F.3d 655 (7th Cir. 2006). On remand, I reviewed the factors under 18 U.S.C. § 3553(a) and concluded that I would impose the same sentence under an advisory guideline regime, United States v. Mendez, No. 98-CR-104, 2007 WL 128340 (E.D. Wis. Jan. 11, 2007), and the Seventh Circuit then affirmed the sentence as well, United States v. Mendez, 223 Fed. Appx. 511 (7th Cir. 2007).

## II. 2255 MOTION

In his § 2255 motion, petitioner argued that (1) his successive state and federal prosecutions for the same murder were vindictive; (2) his trial counsel provided ineffective assistance by failing to raise a statute of limitations defense to count four; and (3) his lawyer provided ineffective assistance by failing to present testimony from exculpatory witnesses. I denied all of his claims on the merits.[1] None deserve encouragement to proceed further.

### A. Vindictive Prosecution

In order to prevail on his first claim, petitioner had to show that a motion to dismiss based on vindictive prosecution would have been meritorious. See United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005). To make out a claim of vindictive prosecution, petitioner had

---

[1] Petitioner defaulted his vindictive prosecution claim by failing to raise it directly, but I permitted him to litigate the claim under the rubric of ineffective assistance of counsel.

2

to show that the prosecution was pursued in retaliation for his exercise of a protected constitutional right. United States v. Cooper, 461 F.3d 850, 856 (7th Cir. 2006). Because petitioner challenged the pre-trial decision to indict him, no presumption of vindictiveness attached; thus, he had to "present objective evidence showing genuine prosecutorial vindictiveness." United States v. Spears, 159 F.3d 1081, 1086 (7th Cir. 1998).

Petitioner relied on the fact that the government indicted him for murder in aid of racketeering after his acquittal of the same murder in state court. However, the fact that a federal prosecution occurs after an unfavorable result in a state court does not, in and of itself, demonstrate vindictiveness on the part of the federal prosecutors. Id. at 1087; see also United States v. Heidecke, 900 F.2d 1155, 1159 (7th Cir. 1990) ("Where there are successive prosecutions by two sovereigns, as in this case, it is improbable that a realistic likelihood of vindictiveness exists."). Petitioner claimed the involvement of the same prosecutors in both cases, but the record showed that just one prosecutor with any connection to the state case appeared for the government in this court, and her involvement on the state side was slight. In any event, the Seventh Circuit has held that overlap between the personnel in the state and federal prosecutors' offices does not support a finding of prosecutorial vindictiveness. United States v. Algee, 309 F.3d 1011, 1014-15 (7th Cir. 2002); Heidecke, 900 F.2d at 1160. Petitioner noted that a local police chief continued to pursue the case after the state court acquittal, but the Seventh Circuit has also made clear that the motives of investigating law enforcement officers may not be imputed to federal prosecutors. Spears, 159 F.3d at 1087. Finally, petitioner claimed that an FBI agent admitted that the federal prosecution was brought to appease the victim's family, but he presented no affidavit from the agent or any other

3

evidence in support of this assertion.[2] Given the lack of any objective evidence of actual vindictiveness, jurists of reason would not debate my decision to deny this claim without a hearing. See United States v. Jarrett, 447 F.3d 520, 525 (7th Cir. 2006) ("Only after a defendant comes forward with objective evidence of actual vindictiveness does the burden shift to the government to show that the motivation behind the charges was proper."); Heidecke, 900 F.2d at 1160 ("To be entitled to a hearing on a claim of vindictive prosecution, the defendant must offer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment.").

In his COA request, petitioner takes issue with my statement that "[t]he notion that this massive prosecution would be brought in order for a prosecutor to vindicate a loss in state court is too far-fetched to meet petitioner's burden or to support an evidentiary hearing." (Decision at 9-10.) He claims that the existence of the pending Latin Kings prosecution actually made it easy for prosecutors to insert him into a case already underway. However, the record shows that other Latin King defendants were likewise pursued federally after state prosecutions. It is clear that the government had a strong interest in prosecuting all members of the Latin Kings enterprise.[3]

Petitioner indicates that motive is hard to establish without being permitted to question the prosecutors. However, because a claim of vindictive prosecution "asks a court to exercise judicial power over a special province of the Executive, courts must begin from a presumption

---

[2]Petitioner also noted that the government indicted him on the last day of the limitations period, but he failed to link this fact to any vindictive motive.

[3]Petitioner questions the strength of the evidence linking him and his original gang – the Nasty Boys – to the Latin Kings, but that issue has already been resolved against him. See Olson, 450 F.3d at 673.

4

that the government has properly exercised its constitutional responsibilities to enforce the nation's laws." Jarrett, 447 F.3d at 525 (internal quote marks omitted). The Supreme Court has made clear that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

Wayte v. United States, 470 U.S. 598, 607-08 (1985). Under the circumstances of this case, jurists of reason would not find debatable or wrong my refusal to engage in such a review on collateral attack.

**B.   Statute of Limitations Claim**

In his second claim, petitioner argued that his lawyer performed deficiently by failing to file a motion to dismiss count four on statute of limitations grounds. As with the first claim, in order to prevail on this claim petitioner had to show that a motion to dismiss the murder count as untimely would have been a winner. See Owens v. United States, 387 F.3d 607, 610 (7th Cir. 2004).

Petitioner killed the victim, Jenna Gonzales, on May 7, 1993, and the government filed

5

an indictment under Case No. 98-CR-78 charging him with the crime on the five-year anniversary of the slaying. See 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").[4] In August 1998, the government consolidated Case No. 98-CR-78 with a larger Latin Kings prosecution initiated in June 1998 under Case No. 98-CR-104. The indictment in 98-CR-104 charged defendant with racketeering (count one), racketeering conspiracy (count two) and the Gonzales murder (count four).[5] Count four of the indictment in Case No. 98-CR-104 charged the exact same crime as the indictment in Case No. 98-CR-78, although the former indictment also incorporated in count four by reference the allegations from the RICO count.

Petitioner argued that the indictment in 98-CR-104 was returned outside the five year period, and that count four could not relate back to the earlier (timely) indictment in Case No. 98-CR-78 by virtue of the consolidation. However, he cited no case forbidding relation back

---

[4] In my Decision denying the claim, I observed in a footnote that the general five year limitation period might not apply because § 1959(a)(1) offenses are punishable by death. Capital crimes have no limitation period. 18 U.S.C. § 3281. In his COA request, petitioner states that § 1959(a)(1) was amended to permit the death penalty in September 1994, after he committed his offense in May 1993, so § 3281 could not apply. (Request for COA at 5, citing United States v. Owens, 965 F. Supp. 158 (D. Mass. 1997).) Courts generally may apply retroactively a statute that effectively enlarges the limitations period, so long as the statute was passed before the prosecution was barred, see United States v. Gibson, 490 F.3d 604, 609 (7th Cir. 2007), cert. denied, 128 S. Ct. 1646 (2008); United States v. Longfellow, 43 F.3d 318, 322 (7th Cir. 1994), as seems to be the case here. In any event, as I made clear in the text of my Decision, I denied the claim because count four was timely under § 3282. Petitioner seeks a COA to clear up my misapprehension as to which statute of limitation applies, but courts do not issue certificates on academic grounds. Petitioner's claim failed on the terms on which he presented it.

[5] Petitioner conceded the timeliness of the two RICO counts.

6

Case 2:08-cv-00667-LA   Filed 04/01/09   Page 6 of 9   Document 19

based on case consolidation or finding a statute of limitations violation under similar circumstances. In his COA request, petitioner argues that a certificate should issue because of the absence of controlling law. But even if I were to assume, arguendo, that the underlying legal issue is uncertain, that does not make debatable the denial of the claim that was actually before me – ineffective assistance of counsel. The law is quite clear that a lawyer does not provide ineffective assistance by failing to raise an unsettled legal claim. Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999) (noting the "universally recognized" rule that an attorney is not liable for an error of judgment on an unsettled proposition of law). Jurists of reason would not debate that proposition.

Petitioner also argues that the allegations in count four of Case No. 98-CR-104 were materially broadened from those contained in Case No. 98-CR-78. But the two counts were identical save only for the incorporation by reference of the allegations in the RICO count in count four. Petitioner cites no authority for the proposition that incorporating other counts by reference materially broadened the murder count. Again, in the absence of legal authority supporting the underlying claim, petitioner cannot establish that his lawyer provided ineffective assistance of counsel. See, e.g., United States v. De La Pava, 268 F.3d 157, 166 (2d Cir. 2001). Jurists of reason therefore would not debate my rejection of this argument.

**C.    Failure to Call Witnesses**

Finally, petitioner argued that his trial counsel failed to call witnesses who supposedly would have testified that the Gonzales murder was not Latin King related. In order to prevail on this claim, petitioner had to demonstrate what the missing witnesses would have said and how their testimony could have affected the outcome of the case. See, e.g., United States v. Farr, 297 F.3d 651, 658-59 (7th Cir. 2002).

7

Petitioner identified four missing witnesses, but three of them – denominated "Individuals A, B, and C" – insisted on remaining anonymous and refused to indicate whether they would even be willing to testify. Further, the only evidence petitioner presented about these three witnesses came from an affidavit from an investigator, who said he had spoken to them. Finally, petitioner did not even allege, much less show, that he identified these individuals to counsel, or that counsel should have somehow found them regardless. At the relevant time, the Latin King street gang included hundreds of members and various factions. See Farr, 297 F.3d at 658 ("An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found."). Petitioner stated that "it can be presumed . . . that their identities were made known to trial counsel by Mendez or, perhaps, the discovery documents tendered by the government. In any event, such issues can be addressed at an evidentiary hearing." (Reply Br. at 7-8.) Courts do not conduct hearings in § 2255 cases based on such speculation.[6]

Petitioner did present an affidavit from the fourth witness, Ruben Herrera, in which Herrera indicated that petitioner's trial counsel spoke to him prior to the trial but did not call him to testify. As I explained in my Decision, Herrera's testimony would have been cumulative of

---

[6]In his COA request, petitioner states that "it can hardly be said that interviewing and presenting the testimony of four individuals identified in discovery documents and/or identified by Petitioner would have constituted a 'scavenger hunt.'" (Request for COA at 8.) As indicated in the text, petitioner never alleged or presented any evidence that he identified Individuals A, B or C for his trial counsel, or that these three people, whoever they might be, were named in the discovery. He again contends that at an evidentiary hearing it would have been revealed that they were known to counsel through the discovery or from petitioner. (Id. at 7.) But in order to obtain an evidentiary hearing, a § 2255 petitioner must demonstrate that he has actual proof of his allegations. Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996). The court does not hold a hearing to see if the petitioner can muster some support for his claims.

8

other testimony presented at trial. As petitioner conceded in his motion, several other Latin King members testified at trial and said the same thing as Herrera. The jury chose to disbelieve the gang witnesses and instead accepted the other evidence, including petitioner's admissions, on this issue. See Olson, 450 F.3d at 673 ("Mendez admitted to at least two people that he killed Gonzales and that the murder was revenge for her involvement in the death of a Latin King recruit."). There was no reasonable probability that the result would have been different had one (or a few) more gang members also denied that murder was gang-related. See United States v. Schaflander, 743 F.2d 714, 718 (9th Cir. 1984) (affirming denial without an evidentiary hearing of an ineffective claim based on failure to call witnesses where the testimony would have been cumulative).

In his COA request, petitioner argues that the testimony of Individual C would not have been cumulative because, unlike the other witnesses, he knew the murdered recruit and claimed that the Latin Kings did not plan to retaliate for his death because they believed it was self-inflicted. But other witnesses covered this general territory and, in any event, petitioner has no answer for the initial failing in his motion – the lack of any evidence that counsel knew or should have known of Individual C, or that Individual C would actually testify. Given these clear deficiencies in petitioner's claim, jurists of reason would not find my denial debatable or wrong.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's request for a COA is **DENIED**.

Dated at Milwaukee, Wisconsin this 1st day of April, 2009.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

9